## OCTOBER TERM, 1795.

### JACOB MYERS v. JAMES SPEED.

#### In Chancery.

This suit was brought in the supreme court for the district of Kentucky, and on the erection of the district into the state of Kentucky the papers were removed to the court of appeals.

Edward Davis, on the 12th day of February, in the year 1780, obtained from the commissioners for the district of Kentucky, the following certificate, to-wit:

"Edward Davis this day claimed a settlement and pre-emption

Myers v. Speed.

to a tract of land in the district of Kentucky, on account of settling in the country in the year 1777, and residing twelve months after the said settlement, and improving lands in the year 1776, lying on the north side of Dick's river, adjoining the waters of Sugar creek, to include his improvement.

It appearing to the court, from the evidence offered, that the said Davis came to this country as a soldier of the militia of Montgomery county, and that he did not reside here twelve months after he was discharged; therefore, the court are of opinion that the said Davis has a right only to a pre-emption of 1,000 acres, to include the above location, and that a certificate issue accordingly."

And having assigned the said certificate to the complainant, the complainant, on the 30th day of January, in the year 1781, entered with the county surveyor the pre-emption warrant he had obtained, in the following words, to-wit:

"Jacob Myers, assignee of Edward Davis, enters 1,000 acres upon a pre-emption warrant, lying on the north side of Dick's river, adjoining the waters of Sugar creek, to include Edward Davis' improvement."

And surveyed the said pre-emption of 1,000 acres of land in the manner described on the connected plat.

Anthony Bledsoe, on the 22d day of December, in the year 1779, obtained from the commissioners for the district of Kentucky the following certificate, to-wit:

"Anthony Bledsoe this day claimed a pre-emption of 1,000 acres of land at the state price, in the district of Kentucky, lying on the head of a branch running on the north side of Dick's river, about three or four miles from the said river, and nearly opposite to Paint lick on Paint lick creek, by marking and improving the same in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Bledsoe has a right to a preemption of 1,000 acres, including the said improvement, and that a certificate issue accordingly."

And having assigned the said certificate to the defendant, and the said defendant having obtained a pre-emption warrant thereon, he entered the same with the county surveyor on the 24th day of February in the year 1781, in the following words, to-wit:

"James Speed, assignee of Anthony Bledsoe, enters 1,000 acres of land, by virtue of a pre-emption warrant, No. 1,002, so to include his improvement in the center of a square running north, east, south, and west."

And on the 16th day of March, in the same year, amended the said entry in the following words, to-wit:

"James Speed amends his entry of 1,000 acres upon a preemption warrant, by running northwardly, eastwardly, southwardly, and westwardly, to be as near in a square as the adjoining claims will admit of."

And having surveyed the same in the manner described on the connected plat, obtained a patent of earlier date than that obtained by the complainant.

The complainant prayed a decree for a conveyance of the interference, alleging that the defendant had made his survey on other land than that described by his certificate and entries.

The annexed connected plat, No. 30, was returned in this cause, of which the following is an explanation:

The Ms, the complainant's pre-emption as assignee of Davis as surveyed. The Ss, the pre-emption of James Speed, the defendant, as assignee of Anthony Bledsoe, as surveyed. The tree is the improvement claimed by the defendant, and at which the plaintiff says was a tree marked I W. oIW, John Wilson's improvement at the head of White oak creek. o, Andrew Cowan's improvement. o *aa*, a place shown in Pawling's field, where Anthony Bledsoe marked a tree A B. D, Myers's improvement as assignee of Davis. The surveys marked 1, 2, and 3 are: 1, John Lapsley's settlement; 2 and 3, the pre-emption of do. The survey designated by dotted lines, including Cowan's cabin, and the tree marked A B, is Pawling's settlement, as assignee of Julius Sanders. The pre-emption around it is that of Merewether's heirs, assignees of Julius Sanders, in four surveys. The Cs and square figure with black lines is Pawling's pre-emption, as assignee of A. Cowan. The square figure adjoining it to the east is Wilson's pre-emption, according to entry. The Ws, Wilson's settlement and pre-emption, according to survey. 4 to 5, Dick's river. 6 to 7, Paint lick creek. 6 to 8, west fork of Paint lick creek. 9 to 10, Drake's creek. A, B, an improvement made by A. Bledsoe. 11 to 12, Gilbert's creek. White oak creek is that at the head of which is John Wilson's improvement. Boone's Mill creek is that at the head of which is the tree and Andrew Cowan's improvement. The other water course is the waters of Sugar creek.

The following facts were found by a jury impaneled in the cause, to-wit:

*First.* That Edward Davis' improvement was made for him in the month of February, 1776, at the place designated in the connected plat thus, D, and that no other improvements or marks were made in the country by or for the said Davis, that being the only improvement he ever claimed therein.

*Second.* That the said improvement was as notorious and generally known as improvements of the like kind were.

*Third.* That Anthony Bledsoe, under whom the defendant claims, did, in the year 1776, make an improvement on the waters of Drake's creek, and did also mark the initials of his name on a tree thus, AB, at the place designated in the plat returned in the cause *Wilson* v. *Speed* (and by consent to be used in this cause), thus, AB, which said improvement was the last, the largest, and most notorious which was made in the country by the said Bledsoe.

*Fourth.* That the said Anthony Bledsoe, at the time of making the said marks and improvements, did claim the same as his improvement, and did then declare in the presence of sundry persons that that place was his choice of the country, and that he meant to lay his claim thereon; and that this is the same place, for the marking and improving of which the commissioners granted to the said Anthony the pre-emption of 1,000 acres under which the defendant claims.

*Fifth.* That the said Bledsoe, in the year 1776, made several improvements on the waters of Dick's river and the Kentucky, at all of which he marked the initials of his name thus, AB.

*Sixth.* That at the place represented in the connected plat thus, o *aa*, there stood in the spring, 1776, a tree marked thus, AB, with a small improvement around the same.

*Seventh.* That Anthony Bledsoe, of whom the defendant is assignee, did not, in the month of January, 1776, mark the letters AB on a red oak tree, and make other improvements at the place designated in the connected plat returned in the suit *Wilson v. Speed* by a tree.

*Eighth.* That this is not the place which was claimed by the said Bledsoe, and proven to be his before the commissioners, and for which they granted him a right of pre-emption.

*Ninth.* That the complainant had sufficient notice of the defendant's survey being made and returned for the said land, to have enabled him to enter a caveat against the issuing of a grant on such survey.

*Tenth.* That Azel Davis and David Findley, by whom the marks and improvements at D were made for Edward Davis, were not hired or employed by Edward Davis to make any improvement for him on the western waters, or requested by him to make such improvement, or paid any consideration therefor after it was made.

*Eleventh.* That the said Azel Davis obtained from the commissioners, in his own name and right, a settlement and pre-emption of 1,400 acres of land, for clearing ground and planting corn in the year 1776.

*Twelfth.* That the said David Findley also obtained from the commissioners, in his own name and right, a certificate for a pre-emption of 1,000 acres, by virtue of one of the improvements made by him and Azel Davis.

*Thirteenth.* That Edward Davis had never been in the now state of Kentucky before the year 1777.

*Fourteenth.* And that the said Azel Davis and David Findley made seven or eight other improvements in this country about the same time when they made the improvement at D, and that William Davis obtained a pre-emption right for one of the said improvements.

BRECKENRIDGE, for complainant.—The first fact proves the making of the complainant's improvement, and that it was the only one in the country which Edward Davis did claim.

At the time Edward Davis obtained this certificate, there were no objects of description but natural marks; this accounts for the manner in which the certificate describes the land, "the waters of Sugar creek."

Anthony Bledsoe, who, it is alleged, obtained a certificate for land in that quarter, gives no name to the water course he calls for; such also is the case with Jackman and Fenton, who obtained certificates.

Myers' claim is certainly a better one than Pawling's, as assignee of Cowan.

There the court rejected the call for the water courses, because they could not be included, and rested the claim wholly on the call for the improvement.

Here our improvement is found by the jury, which is a stronger case than Pawling's, and it is not necessary to reject any call. See the case of *Pawling* v. *Merewether*.

The jury have not only established our improvement, but they have also found that the defendant has no just claim to this spot.

The statement that the complainant neglected to caveat Speed's survey, is silenced by the case of *Harrod* v. *Givens*, in the late supreme court.

The right to caveat being given, Chan. Rev. 94, did not exclude any other remedy. 19 Vin. 511, 512; 2 Inst. 200; 2 Show. 30.

Upon this finding of the jury, the court must give us a decree, for although it is stated that the improvement was made for Edward Davis, it is also stated that it is the only one made by or for him, and the only one claimed by him. Therefore, taking the whole of the fact and the certificate together, it must be the improvement for which the certificate was granted.

The question how the improvement was made, was submitted to the commissioners, and I deny the power of the court to inquire into it either directly or indirectly. In the case of *Kenton* v. *McConnell*, the court did not pretend to inquire into it collaterally.

But the maxim applies here—*qui facit per alium, facit per se;* and unless Speed is to be considered as the guardian of the commonwealth, he has no right to make this inquiry, for he has no land here.

To reverse this certificate, because the improvement was made for Davis would be to contradict the record, which shall not be done.

All the court said in *Kenton* v. *McConnell* was that it might be reversed for errors appearing on the face of it, and here there is none.

As I am convinced that a court of chancery will never suffer itself to be entangled in cobweb forms, I conclude the court will decree in favor of the complainant.

MURRAY, for complainant.—I contend that it was not necessary to bring proof as to the making of Davis' improvement; that an improvement was made by Edward Davis in 1776 is one of the things adjudged by the commissioners, and of which the certificate is evidence, and if the fact is any way contrary to the certificate it must so far be rejected.

In the case of *Speed* v. *Briscoe*, the court did not determine on a fact contrary to the commissioners' opinion, or they would not have refused so to do in the case of *Kenton* v. *McConnell*.

But they determined that case on the proof that a former certificate had been obtained, and upon a point not known or inquired into by the commissioners.

That the complainant brought forward this fact makes no difference, he was bound to show where the land was, and submitted a fact to the jury for that purpose, and if they have found any thing contrary to the record it is so far void.

The complainant was not bound to caveat Speed, for it was not his business to show Speed the spot he ought to have surveyed.

The complainant by law had his choice of remedies, and no act of the defendants can deprive him of it.

This certificate has as much certainty as most of them have; an examination of the books will prove that not more than one out of ten are more certain than this.

I contend that Speed has not as much equity as Davis; he has no claim to this land, and Davis obtained a legal certificate for it.

NICHOLAS, for defendant.—The claim of the complainant can not be supported for several reasons.

*First.* Because the improvement was not made by Edward

Davis himself, but by another person for him, and the law did not authorize the issuing of a certificate in such case. See Chan. Rev. 92.

*Second.* If the law did allow one man to claim by virtue of an improvement made by another, under the maxim *qui facit per alium, facit per se,* it would be necessary to show that the person making the improvement was employed so to do by the party claiming. That this was not the case here, the facts prove. And,

*Third.* Because Findley and Azel Davis obtained certificates for their own services, and therefore could not, under the law, be considered as improving for Edward Davis.

The facts must correspond with the certificate. And there are two grand requisites to such claims as these:

*First.* The actual improvement of the spot.

*Second.* The notoriety of the improvement.

The certificates mentioned by Mr. Breckenridge were made certain by the call for the improvement.

It is not surely necessary to remind the gentlemen that unless they show a right to call for the legal title, it is totally immaterial whether the defendant in chancery has any just claim to the land or not.

His title at law will protect him.

Speed's claim to this land is at least as good as Edward Davis', for although Davis laid his claim here, he had really no right to any land at all.

Mr. Breckenridge contends we must not contradict the record by evidence, but he forgets that it is his own fact has done it.

The situation of the complainant is such, respecting the proof of his improvement, that he must fail either way.

If this fact is rejected his claim is void for uncertainty, and if the fact is admitted it shows the claim is an illegal one.

Beside, the fact does not establish the notoriety of the improvement, but only that it had as much notoriety as improvements of the like kind, without ascertaining what notoriety the other improvements had.

At the August term, in the year 1795, the following decree was pronounced:

BY THE COURT.—By the third fact found for the complainant, it appears that the pre-emption right under which the defendant claims was not allowed for the land in contest.

Therefore, the only question necessary for the court to decide

on is, are the locations made with the commissioners and surveyor of the pre-emption right under which the complainant claims such as the law requires, and is his survey made agreeably to them?

The second fact found for the complainant ascertains that the improvement he claims was as notorious and as generally known as improvements of the like kind were. But it seems to the court that this fact is not material, inasmuch as it is not also found what degree of notoriety the generality of other improvements had at the time he made his location with the commissioners.

This being the case, were it clear that his location with the commissioners was as particular as it could have been made at that time, yet the court is of opinion that his location with the surveyor is not in any reasonable degree so special and precise as the law and the reason of the case require, and consequently that it can not be determined whether his survey has been made agreeably thereto.

The court is confirmed in this opinion by considering that the complainant, both with his location with the commissioners and the surveyor, calls to include his improvement; whereas he now shows, as it appears from his first fact, an improvement made for him by some other person or persons; and as it clearly appears that the law contemplated the improvements for which pre-emptions were to be allowed, as personal services rendered to the community; it seems that the court ought not to presume the improvement which the complainant shows is the same called for in his location with the commissioners, and that the first fact found for him (which appears to be intended to identify his improvement) contradicts his certificate and makes a material addition thereto, therefore ought not to have any weight in the decision. Therefore, it is decreed and ordered that the complainant's bill be dismissed, and that the defendant recover of him his costs by him in this behalf expended.

But a rehearing being prayed on the following certificate of errors:

*First.* That it is alleged, as a ground for the said decree, that the second fact found for the complainant is immaterial.

*Second.* That it is alleged that the locations of the complainant with the commissioners and the surveyor are, the former not as particular as it might have been made at the time, the latter not as special and precise as the law and reason of the case require.

*Third.* That the said decree in effect, though not in terms, goes

to establish the principle that this court may examine into the sufficiency of the evidence and the foundation upon which the commissioners granted their certificates, and will affect most of those claims in this country.

*Fourth.* That it is said that the court ought not to presume that the improvement the complainant shows is the same called for in his location with the commissioners, when by the facts found it appears that it must be.

The court directed the cause to be reheard on the first day of the next term, at which time the argument came on, on the rehearing, and the following decree was pronounced:

BY THE COURT.—On the first error which has been assigned, it still seems to the court that the second fact found for the complainant is immaterial, for the reasons stated in the opinion before given on the case.

As to the second error assigned, it does not appear that the court has alleged that the complainant's location with the commissioners was or was not as particular as it could have been made; it is only stated that his location with the surveyor is not so special and precise as the law and the reason of the case require.

This continues to be the opinion of the court, because, however certainly the improvement called for in the complainant's entry may have been identified on the trial, it seems to be equally necessary to have ascertained that at the time of making the entry it was generally known to be claimed by him by those who were conversant with the neighborhood thereof, or that the entry contained such a description as would have led subsequent locators to it. Neither of which was done.

And it may be proper further to observe that in the case of *Consilla* v. *Briscoe*, it appeared that Consilla's spring and improvement were notorious to the neighborhood, and were known to Briscoe himself long before he made his entries.

And the case of *Smith and Bryant* v. *Bradford*, it likewise appeared that Bryant's claim was well known to the generality of those conversant in the neighborhood, and in no case within the recollection of the court has notoriety been dispensed with where it was made a question.

It is evident that on those considerations the court founded the decree. What is contained in the former opinion of the court, to which the third and fourth errors assigned relate, and which is only stated by way of confirmation, now seems to the court to be

superfluous, inasmuch as the first fact found for the complainant to which it refers, if taken in the greatest latitude, can only identify the improvement he claims; therefore, the court leaves the doctrine which that part of the opinion contains to be decided upon whenever a case may arise wherein it shall be necessary to do so.

On the whole, it is decreed and ordered that the decree aforesaid do stand unaltered and confirmed. With costs, etc.

NOTE.—The letters marked at A. Bledsoe's improvements are united, the first stroke of the B forming a part of the A.